# EXHIBIT A

Attorney(s):          Matthew A. Luber, Esquire
Attorney Id No.:      017302010
Law Firm:             McOmber & McOmber, P.C.
Address:              30 South Maple Avenue, Suite 201
                      Marlton, New Jersey 08053

Telephone No.:        (856) 985-9800
Fax No.:              (732) 530-8545
E-mail:               mal@njlegal.com
Attorney(s) for Plaintiff(s): KATHERINE VESCE

| | |
|---|---|
| **KATHERINE VESCE** | **SUPERIOR COURT OF NEW JERSEY** |
| | **LAW DIVISION** |
| | **HUDSON COUNTY** |
| Plaintiff(s) | |
| vs. | DOCKET NO.: **HUD-L-003329-17** |
| **UBER TECHNOLOGIES, INC.,** | |
| **RAISER, LLC, UBER USA, LLC,** | **CIVIL ACTION** |
| **SOULEYMANE NIANGO (sp),** | |
| **ANDREW QUINTANA (sp)** | **Summons** |
| Defendant(s) | |

FROM THE STATE OF NEW JERSEY

To the Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $ **175.00**      and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10792
Rev. 11/14   P2/15

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 1

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey statewide hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated:  August 18, 2017

/s/ Michelle M. Smith
**MICHELLE M. SMITH**            *Clerk of the Superior Court*

Name of Defendant to be Served: **RAISER, LLC**

Address of Defendant to be Served:  **182 HOWARD STREET, #8, SAN FRANCISCO, CALIFORNIA 94105**

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10792
Rev. 11/14    P2/15

Powered by HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com    800.222.0510      Page 2

# Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main Street
Hackensack, NJ 07601
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Floor, Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice, First Floor
101 South Fifth Street, Suite 150
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY**
Deputy Clerk of the Superior Court
9 North Main Street
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street, P.O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake, First Floor, Court House
1 North Broad Street
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Department
Brennan Court House, First Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY**
Deputy Clerk of the Superior Court
Middlesex Vicinage
Second Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY**
Morris County Courthouse
Civil Division
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2923
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY**
Deputy Clerk of the Superior Court
First Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

*Updated: 8/21/13*

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10153
Rev. 8/13   P2/15

Powered by
HOTdocs™

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 3

Attorney(s):                Matthew A. Luber, Esquire
Attorney Id No.:            017302010
Law Firm:                   McOmber & McOmber, P.C.
Address:                    30 South Maple Avenue, Suite 201
                            Marlton, New Jersey 08053

Telephone No.:              (856) 985-9800
Fax No.:                    (732) 530-8545
E-mail:                     mal@njlegal.com
Attorney(s) for Plaintiff(s): KATHERINE VESCE

| | |
|---|---|
| **KATHERINE VESCE** | **SUPERIOR COURT OF NEW JERSEY** |
| | **LAW DIVISION** |
| Plaintiff(s) | **HUDSON COUNTY** |
| vs. | |
| **UBER TECHNOLOGIES, INC.,** | DOCKET NO.: **HUD-L-003329-17** |
| **RAISER, LLC, UBER USA, LLC,** | |
| **SOULEYMANE NIANGO (sp),** | **CIVIL ACTION** |
| **ANDREW QUINTANA (sp)** | |
| Defendant(s) | **Summons** |

### FROM THE STATE OF NEW JERSEY

To the Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $ 175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

81 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10792
Rev. 11/14    P2/15

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com    800.222.0510    Page 1

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey statewide hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A directory with contact information for local Legal Services Offices and Lawyer Referral Services is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated:   **August 18, 2017**

/S/ Michelle M. Smith

**MICHELLE M. SMITH**        *Clerk of the Superior Court*

Name of Defendant to be Served: **RAISER, LLC**

Address of Defendant to be Served: **182 HOWARD STREET, #8, SAN FRANCISCO, CALIFORNIA 94105**

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10792
Rev. 11/14    P2/15

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com    800.222.0510      Page 2

# Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main Street
Hackensack, NJ 07601
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Floor, Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice, First Floor
101 South Fifth Street, Suite 150
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY**
Deputy Clerk of the Superior Court
9 North Main Street
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street, P.O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake, First Floor, Court House
1 North Broad Street
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Department
Brennan Court House, First Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY**
Deputy Clerk of the Superior Court
Middlesex Vicinage
Second Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY**
Morris County Courthouse
Civil Division
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2223
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY**
Deputy Clerk of the Superior Court
First Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

*Updated: 8/21/13*


Powered by

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 3

Matthew A. Luber, Esq. – NJ ID # 017302010
   mal@njlegal.com
Armen McOmber, Esq. – NJ ID # 018251998
   ram@njlegal.com
Christian V. McOmber, Esq. – NJ ID # 012292010
   cvm@njlegal.com
Elizabeth A. Matecki, Esq. – NJ ID #108372014
   eam@njlegal.com
Kaitlyn R. Grajek, Esq. – NJ ID # 208202016
   krg@njlegal.com
McOMBER & McOMBER, P.C.
30 S. Maple Avenue
Marlton, New Jersey 08053
(856) 985-9800 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Katherine Vesce*

| | |
|---|---|
| KATHERINE VESCE,<br><br>                    Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC., RAISER, LLC, UBER USA, LLC, SOULEYMANE NIANGO (sp), ANDREW QUINTANA (sp),<br><br><br>                  Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>HUDSON COUNTY<br><br>DOCKET NO.:<br>Civil Action<br><br>**COMPLAINT & DEMAND<br>FOR TRIAL BY JURY** |

       Plaintiff Katherine Vesce ("Plaintiff"), by and through her undersigned attorneys, hereby files the following Complaint and Jury Demand against Defendant Uber Technologies, Inc. ("Uber"), Rasier, LLC ("Rasier"), Uber USA, LLC ("Uber USA") (collectively "Uber Entities") Souleymane Niango (sp) ("Defendant Uber Driver"), and Defendant Andrew Quintana (sp) ("Defendant Quintana") (collectively "Individual Defendants") (collectively "Defendants"), and alleges as follows:

**INTRODUCTION**

1.      Uber is a global online transportation company headquartered in San Francisco, California.  Uber is the creator and provider of the Uber app ("App"), a downloadable software application that allows consumers to request a taxi-like ride with the push of a button on a smartphone.  Once a consumer requests a ride, a nearby Uber driver "accepts" the request and the App displays an estimated time of arrival for the Uber driver to arrive at the consumer's pickup location.  The App also notifies the consumer when the driver is about to arrive and it provides general information about the driver (e.g., first name, vehicle type, and license plate number).  The rider then enters the preferred destination, which the rider can do before or during the ride.  Upon arriving at a destination, the rider exits the vehicle and the fare is automatically calculated and charged to the payment method linked to the rider's Uber account—typically a credit card.[1]

2.      At first blush, Uber sounds fantastic.  From a business perspective, the App eliminates the need for dispatchers and cuts down on wasteful time that full-time cab-drivers might spend driving around looking for fares.  For the consumer, the experience is supposed to be easy and completed entirely through the App.  But a deeper assessment reveals that Uber's service inherently puts consumers at serious risk and that the company has sacrificed rider safety to realize rapid and global expansion.  Uber realizes it must inform consumers of strong safety measures to induce riders to book a trip with its drivers, and so, Uber represents to consumers it "uses technology to keep drivers and riders safe… which is all backed up by a robust system of pre-screenings of driver."  But Uber's claim of safety is a complete and total sham.

3.      Plaintiff is a 27-year old senior marketing manager from Chicago, Illinois.  An avid runner and former collegiate athlete, Plaintiff trained for several years in preparation for her first

---

[1] Uber keeps a percentage of the fare paid by the rider.

marathon.   In early 2016, Plaintiff submitted her application to run the prestigious New York City

marathon ("Marathon"), which is an annual 26.2-mile race that courses through the five boroughs

of New York City.   The New York Marathon is the largest marathon in the world, with nearly

100,000 applicants and 51,394 finishers in 2016.

4.      In November 2016, Plaintiff flew from Chicago to New York to fulfill her life-long

goal.  On the morning of the Marathon, November 6, 2016, Plaintiff intended to take a shuttle bus

from her Manhattan hotel to the starting line, which was located on the western end of the

Verrazano-Narrows Bridge in Staten Island, New York.   However, relying upon Uber's

representations of safety, Plaintiff decided to hail an Uber car instead.  Plaintiff had trusted Uber,

and the Uber Driver, to transport Plaintiff to the starting line in a careful and safe manner.   They

failed Plaintiff.

5.      At approximately 6:30AM that morning, Plaintiff hailed a ride through the Uber

App and the Uber Driver went to the location as instructed by Uber.  The Uber Driver arrived just

a few minutes later.  Plaintiff entered the back seat of the car and sat directly behind the Uber

Driver.  It was not long into the commute, however, that Plaintiff noticed there was something

"off" with the Uber Driver.   To begin, Plaintiff realized that the Uber Driver was not a skilled

driver.  The Uber Driver nearly caused several accidents within the first few minutes of the

commute and drove erratically to make turns and pass other vehicles.  But worse, the Uber Driver

had difficulty communicating with Plaintiff in English and, based on her interactions with the Uber

Driver, it appeared that he was unable to read or understand the various highway signs they passed

along the way.

6.      As the trip continued, Plaintiff explained that GPS directed the Uber Driver to take

US-1/US 0 S/Pulaski Skyway to Interstate 95/Dowd Ave/North Ave/Eliz Seaport/New Jersey

Turnpike.  Although Plaintiff advised the Uber Driver that the upcoming exit was *one and a half miles away*, the Uber Driver suddenly and inexplicably veered through four lanes of traffic at nearly 70 miles per hour.  That is, the Uber Driver swerved all the way from the left lane to the right lane, so much so that the vehicle was driving horizontally to the correct flow of traffic.  The Uber's Driver car then slammed, in a T-bone fashion, into Defendant Quintana's car at full-speed.  Both cars careened off the highway and in to a fence on the side of the road ("Accident"):



7.     As a result of the accident, Plaintiff was knocked unconscious and sustained, among other things, a significant knee injury.  A police officer eventually transported Plaintiff to the hospital.  Plaintiff was unable to run the Marathon, and she likely will never run a marathon in the future.

8.     While the Individual Defendants' negligence and reckless driving is certainly responsible for the Accident, Uber's failure to train, supervisor, and/monitor its drivers, as well as its negligence, fraud, and misleading statements regarding the safety of its services, are just as much, if not more, to blame for Plaintiff's injuries.  Uber buries in fine print that it cannot exercise any actual control over their drivers while they work (which is false), it disclaims any representation of rider safety (riders get in the car at their own risk according to the Uber App's terms and conditions), and fails to effectively screen drivers and monitor their conduct (while

4

telling consumers drivers are put through a "rigorous" screening and hiring process).   All of this

is directly contrary to Uber's representations to the public in general and to Plaintiff in particular.

9.      Plaintiff accordingly brings this lawsuit, which not only seeks to compensate

Plaintiff for her injuries, but to expose Uber's deceitful pledge to rider safety.

## PARTIES

10.      Plaintiff is an individual residing at 1881 Oak Avenue, Evanston, Illinois 60201.

11.      Defendant Uber Technologies, Inc. is a Delaware Corporation with its principal

place of business at 1455 Market Street, San Francisco, California 94105.

12.      Defendant Rasier, LLC is a foreign limited liability company organized and

existing under the laws of the State of Delaware, whose principal office is 182 Howard St. #8, San

Francisco, CA 94105.

13.      Defendant Uber USA, LLC is a foreign limited liability company organized and

existing under the laws of the State of Delaware, whose principal office is 1455 Market St., Fl. 4,

San Francisco, CA 94013.  Rasier, LLC and Uber USA, LLC are wholly-owned subsidiaries of

Uber Technologies, Inc. and are alter egos or conduits by which Uber Technologies, Inc. does

business. These three entities are referred to collectively in this petition as "Uber" or "Uber

Entities" as appropriate.

14.      Defendant Uber Driver is an individual that resides in Bronx, New York.  At all

relevant times, the Uber Driver was an employee or agent of the Uber Entities and who acted in

the course and scope of his employment, such that the Uber Entities are liable for his conduct.  At

all relevant times, the Uber Driver and the Uber Entities were acting under a concert of action and

therefore they are jointly responsible for causing the Accident that injured Plaintiff.  As such, the

Uber Entities and the Individual Defendants should be directly or jointly liable for any damages to Plaintiff.

15.     Defendant Quintana is an individual citizen of New Jersey who resides in Union City, New Jersey.

## JURISDICTION AND VENUE

16.     The Court has personal jurisdiction because the transactions and occurrences that give rise to this lawsuit took place in Hudson County, New Jersey.

17.     Venue is proper in the Hudson County pursuant to *Rule* 4:3-2(a)(3) because the transactions and occurrences that gives rise to this lawsuit took place in this County.

18.     The Court has personal jurisdiction over Defendant Uber and its subsidiaries/alter egos Defendant Rasier and Defendant Uber USA. The Court has personal jurisdiction over the Uber Entities as they are engaged in business in New Jersey and have purposefully availed themselves of the privilege of conducting business in Hudson County and in New Jersey. Continuously and systematically, the Uber Entities have targeted and marketed their services to New Jersey Citizens.  Continuously and systematically, the Uber Entities have contracted with residents of New Jersey who are drivers for the purpose of services being provided in New Jersey and in Hudson County, New Jersey.  Continuously and systematically, the Uber Entities have contracted with residents of Hudson County who seek and receive car services from drivers in and around New Jersey. These continuous and systematic contacts with New Jersey are so substantial that the Uber Entities are subject to general jurisdiction in New Jersey.  Further, the claims in this case arise from or relate to the Uber Entities' contacts with New Jersey such that those contacts with New Jersey are substantially connected to the operative facts of this proceeding.

## FACTUAL BACKGROUND

### Uber Drivers Are Employees, Not Independent Contractors

19.     Uber is rapidly expanding.  It is projected that the company will generate billions

of dollars in revenue this year alone.  This is because almost *anyone* can be an Uber driver, which

is a central part of the company's marketing scheme.  As shown on the company's website:



**Make good money.** Got a car? Turn it into a money machine. The city is buzzing and Uber makes it easy for you to cash in on the action. Plus, you've already got everything you need to get started.



**Drive when you want.**
Need something outside the 9 to 5? As an independent contractor with Uber, you've got freedom and flexibility to drive whenever you have time. Set your own schedule, so you can be there for all of life's most important moments.



**No office, no boss.**
Whether you're supporting your family or saving for something big, Uber gives you the freedom to get behind the wheel when it makes sense for you. Choose when you drive, where you go, and who you pick up.

20.     Upon information and belief, Uber employs more than a million drivers.  Uber takes

a fee ranging between twenty and thirty percent of every ride charged to customers.

21.     Uber holds itself out as nothing more than a technological platform designed simply

to enable consumers to have easy access to transportation; the reality is, Uber is involved in

virtually every aspect of the operation and retains significant control over its drivers.

22.     Upon information and belief, as a matter of policy, Uber maintains strict control

over its drivers including, but not limited to, proper and desirable conduct in dealing with

7

passengers, optimal routes and travel times, fee arrangements and pricing, and vehicle maintenance requirements.

23.     Uber drivers are specifically instructed on proper conduct and standards expected by Uber though instructional videos, handbooks, and training sessions.   Failure to follow the mandatory standards leaves drivers subject to poor ratings and reviews, diminished access to fares and a lock-out from the application - tantamount to termination of the driver's employment with Uber.  For example, upon information and belief:

  a.     Uber has the discretion to fire its drivers for any reason and at any time.

  b.     Drivers are not charged a fee by Uber to apply to become employees.

  c.     Drivers are not charged a fee to download the App to receive notifications of rides requested via the App.

  d.     Uber recently announced that drivers will have guaranteed earnings.

  e.     Fare prices for rides are set exclusively by Uber and drivers are not permitted to negotiate with customers.

  f.     Uber controls its drivers' contact/customer list and drivers are not permitted to book Uber customers unless it is through the App.

  g.     Uber requires its drivers to accept all ride requests when the drivers are logged into the App.  Drivers that reject too many ride requests risk facing discipline, including suspension or termination.

  h.     Uber has a dress code for drivers.

  i.     Uber requires drivers to send the customer a text message when the driver is close to the pickup location.

j. Uber trains drivers on compliance with local regulations, down to the placement of the Uber placard:



k. Uber dictates the radio stations utilized by drivers.

l. Uber requires drivers to open the door for the customer and to pick up the customer on the correct side of the street.

m. Drivers who accept trip requests are required to bring the driver to the preferred destination.

24. Uber has attempted to insulate itself by setting up an elaborate system of subsidiary companies. Two of those entities are Rasier, LLC and Uber USA, LLC, which are nothing more than alter egos of Uber. These entities are designed to circumvent the law and further mislead the public.

25. Upon information and belief, Uber created Rasier, and drivers (such as the driver in this case) sign an agreement with Rasier (not Uber). As part of that agreement, when passengers are transported and a fee is earned, part of the fee goes to the driver and part allegedly goes to Rasier. Uber allows the passengers to be misled by not making clear that the driver purports to be affiliated with Rasier.

26. Uber's efforts to disclaim its drivers as employees is unavailing. Uber's subsidiaries are, as a matter of law, Uber's alter egos. Uber retains the right of control its drivers such that the drivers are clearly Uber's agents or employees for purposes of liability.

**Uber Knows Its Driver Vetting Process is Flawed But**
**Represents to Riders that Uber Provides the Safest Rides on the Road**

27.     Despite its representations, advertising, and promotional materials, Uber cannot assure riders of the safety of the driver behind the wheel.  To the contrary, Uber's services put consumers at an increased risk.

28.     The   number   of   reported   incidents   speak   for   themselves.     *See* http://www.whosdrivingyou.org/rideshare-incidents.   Upon information and belief, over thirty different sexual assaults by Uber drivers against Uber passengers have been reported in the media in the last two years alone.

29.     Uber has, and continues to, knowingly mislead the public about the safety and security measures it employs for rider safety.  Riders, such as Plaintiff, reasonably relied on Uber's representations and promises about its safety and security measures, including its driver screening and background check procedures.

30.     Uber knew that its representations and promises about rider safety were false and misleading, yet continued to allow its riders to believe in the truth of its representations and promises, and to profit from its riders' reliance on such representations and promises.

31.     Upon information and belief, Uber has fought legislation and other measures requiring, among other things, strong background checks for its drivers.

32.     Upon information and belief, Uber currently uses a third-party vendor, Checkr Inc. ("Checkr"), to run security checks on its drivers.

33.     Upon information and belief, Checkr merely identifies addresses matching any convictions to screen Uber drivers.

34.     To become a driver for Uber, individuals apply through Uber's website.  The application process is entirely online and involves filling out a few short forms and uploading photos of a driver's license, vehicle registration, and proof of insurance.

35.     To become an Uber driver, an individual must be at least 21 years of age, have at least one year of driving experience, have a valid US driver's license, have an eligible 4-door vehicle, and have proof of vehicle registration and insurance, and completion of online screening. That is all.

36.     Upon information and belief, Uber does not do any of the follow:

    a.    verify vehicle ownership (it only requires that the vehicle is registered and is not more than ten years old);

    b.    require a car inspection prior to use by a driver (Uber does not require periodic/updated inspections either);

    c.    verify that the person applying to be the driver is uploading his or her own personal documents;

    d.    verify that the person who is driving is the same person who opened that account;

    e.    require drivers to submit fingerprints for comparison against Department of Justice and Federal Bureau of Investigation databases;

    f.    conduct Live Scan biometric fingerprint background checks of applicants;

    g.    conduct in-person interviews of applicants;

    h.    verify that social security numbers and other personal identification numbers submitted in the application process belong to the applicants;

    i.    require drivers to attend training classes on driving skills;

11

     j.      require drivers to attend training classes on harassment or violence;

     k.      require drivers to attend training classes to hone skills needed for safely using mobile Apps while driving;

     l.      require driver to pass written examinations;

     m.     require drivers to pass road vehicle tests; and

     n.     require drivers to pass vision and hearing exams; and/or

     o.     conduct follow-up background checks.

37.     In short, the application process to become an Uber driver is simple, fast, and designed to allow the company to hire as many drivers as possible, all at the expense of rider safety—Uber's claimed number one priority.

38.     Upon information and belief, a number of individuals have passed Uber's screening process despite serious felony convictions and there have been reports of individuals driving Uber cars where that person was not the person on the Uber profile.[2]

39.     Despite these facts, Uber uses advertisements to portray the company as the *"safest ride on the road"* due to its *"rigorous"* and *"industry-leading screening"* of Uber Drivers. Plaintiff, like other consumers, specifically relied on the following advertisements located on Uber's website/social media pages as wells as comments made by Uber executives:

     a.     "What I can tell you is that Uber takes passenger safety very seriously. *We work every day to connect riders with the safest rides on the road and go above and beyond local requirements in every city we operate*. Uber only partners with drivers who pass an *industry-leading screening* that includes

---

[2] Media outlets have reportedly confirmed the problem by having reporters submit false documents to Uber and still getting approved to be a driver

a criminal background check at the county, federal, and multistate level going back as far as the law allows. We also conduct ongoing reviews of drivers' motor vehicle records during their time as an Uber partner... For more information on what makes Uber *the safest rides on the road*, please see our website..."

b.   "*Safest rides on the road – going the distance to put people first*," that "wherever you are around the world Uber is committed to connecting you to the safest ride on the road."

c.   "The *strictest safety standards possible*," → "the specifics vary depending on what local governments allow, but within each city we operate, we aim *to go above and beyond local requirements* to ensure your comfort and security – what we're doing in the US is an example of our standards around the world."

d.   "Uber uses technology to keep drivers and riders safe, for instance by GPS-tracking every ride and allowing riders to share their journeys in real time with families or friends. *This is all backed up by a robust system of pre-screenings of drivers*. We also have a dedicated incident response team on call 24/7 to investigate safety incidents."

e.   "Actions that threaten the safety of drivers and riders will be investigated and, if confirmed, lead to permanent deactivation of your account."



## BACKGROUND CHECKS YOU CAN TRUST

Every ridesharing and livery driver is thoroughly screened through a rigorous process we've developed using constantly improving standards. This includes a three-step criminal background screening for the U.S. with county, federal and multi-state checks that go back as far as the law allows — and ongoing reviews of drivers' motor vehicle records throughout their time on Uber.

## Driver screening

All drivers in the US must provide their license and vehicle documentation before being able to drive with Uber. They're also required to go through a pre-screening process that includes a review of their motor vehicle records and a search through criminal records at the county, state, and federal levels.*

## Share your ETA

Once your driver has picked you up, share your ETA with your friends and family so they can follow your route and know when to expect you.

* Uber's screening process does not require fingerprints, Live Scan, or the DOJ/FBI databases. For more details on our screening process, read our safety blog post. In New York City, DMV and criminal background checks are conducted by the Taxi and Limousine Commission (TLC) according to their licensing standards.

14





Rider Safety

A ride you can always trust

**Safe pickups**

The Uber app automatically finds your location to provide door-to-door service. That means you stay safe and comfortable wherever you are until your driver arrives.

**Anonymous feedback**

After every trip, you can rate the driver and provide anonymous feedback about your ride. Our goal is to make every ride a great experience.

**Driver profiles**

When you're matched with a driver, you'll see their name, license plate number, photo, and rating—so you know who's picking you up ahead of time. And even after the trip, you're able to contact your driver if you left something behind.



40.     To induce consumers to give Uber money, Uber falsely and recklessly promotes the idea that its rides are safe.

41.     However, Uber does virtually nothing to ensure that passengers are safe once they get in the car. Just in the last year, several lawsuits have exposed Uber's fraudulent safety claims and have led to Uber having to pay tens of millions of dollars and to stop defrauding the public with its misleading claims.

42.     Uber once claimed it had "industry-leading" background checks. However, district attorneys in San Francisco and Los Angeles sued Uber for the reason that Uber's background checks were minimal and less than what are used for licensed taxi drivers. The District Attorneys showed that Uber's background checks failed to prevent dozens of criminals from driving for Uber in those cities, including several registered sex offenders and a convicted murderer. After agreeing

to pay up to $25,000,000.00 to settle that case, Uber also has to stop using the misleading and false claim that its background checks were "industry-leading."

43.  Similarly, a class action lawsuit in California was brought by a class of passengers complaining of the safety-related advertising Uber utilizes. Uber had been advertising that Uber rides were "safer than a taxi" and claiming that it was "the safest ride on the road" despite its virtually nonexistent safety policies. Again, Uber had to settle such a lawsuit, agreeing to pay $28.5 million and change its safety-related advertising.

44.  Further, Uber had to stop scamming its customers by adding a "Safe Ride Fee" on top of the actual service charge. Uber still charges the fee, but, upon information and belief, now just calls it a "booking fee."

45.  Uber's pattern of behavior demonstrates a clear intention to mislead the public about the safety of its service when it is much less safe than other options.

46.  In addition, Uber represents to customers, on a global scale through its website, that its services are safe because:

     a.     "If we are made aware of this type of problematic behavior, we will contact you so we can investigate them. Depending on the nature of the concern, we may put a hold on your account during our investigation. If the issues raised are serious or a repeat offense, or you refuse to cooperate, you may lose access to Uber… Uber will also deactivate the account of any driver who receives several or serious complaints of poor, unsafe, or distracted driving while using the Uber app.

     b.     "We expect drivers using the Uber app to act in compliance with all relevant state, federal and local laws and the rules of the road at all times. This

includes meeting the regulatory requirements for rideshare or for-hire drivers in your area.

c.     "All drivers wanting to use the Uber app are required to undergo a screening process, like motor vehicle record and background checks, to ensure safety and compliance with our criteria."

d.     "Safety first: Everyone wants to get from A to B safely. So please ensure that you follow the local law. Check out our rider safety tips. Whether you're in the front or the back seat, buckle up when you get into the car — and please leave your guns at home. Of course, drivers have a particular responsibility when it comes to safety at Uber......"

e.     "Always the ride you want. The best way to get wherever you're going"

f.     "Always on, always available: No phone calls to make, no pick-ups to schedule. With 24/7 availability, request a ride any time of day, any day of the year."

g.     "You rate, we listen: Rate your driver and provide anonymous feedback about your trip. Your input helps us make every ride a 5-star experience."

47.     And yet, Uber disclaims all supervision and responsibility for the conduct of its drivers. Buried in the legal section of the App is the following disclaimer (or similar disclaimer):

**5. Disclaimers; Limitation of Liability; Indemnity.**

**DISCLAIMER.**

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-

INFRINGEMENT. IN ADDITION, UBER MAKES NO
REPRESENTATION, WARRANTY, OR GUARANTEE
REGARDING THE RELIABILITY, TIMELINESS, QUALITY,
SUITABILITY OR AVAILABILITY OF THE SERVICES OR
ANY SERVICES OR GOODS REQUESTED THROUGH THE
USE OF THE SERVICES, OR THAT THE SERVICES WILL BE
UNINTERRUPTED OR ERROR-FREE. UBER DOES NOT
GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR
ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT
THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE
SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN
CONNECTION THEREWITH, REMAINS SOLELY WITH YOU,
TO THE MAXIMUM EXTENT PERMITTED UNDER
APPLICABLE LAW.

**Plaintiff Is Injured In An Accident That Resulted From the
Uber Driver's Negligent and Reckless Driving**

48.     On the morning of the Marathon, or November 6, 2016, relying upon Uber's

representations of safety, Plaintiff decided to take an Uber car to the starting line of the Marathon.

49.     While in route, the Uber Driver suddenly and inexplicably veered through four

lanes of traffic at nearly 70 miles per hour.  Uber's Driver car then slammed, in T-bone fashion,

into another car at full-speed.

50.     As a result of the accident, Plaintiff was knocked unconscious and sustained, among

other things, a significant knee injury.

51.     Despite Uber's advertisement that stress a *"rigorous"* and *"industry-leading*

*screening process"*, the Uber Driver operated the driver in a reckless manner and he could not read

street signs or read the GPS.

52.     Although Uber claims its drivers as independent contractors, Uber was in an

employer-employee relationship with the Uber Driver; it acted as a principal and its drivers, subject

to its full control, acted as agents of Uber; and it was in a principal-agent relationship with the

Uber Driver.

19

53.     At all times herein mentioned, the Uber Driver was acting in furtherance of Uber's business enterprise and its financial interests.  It was reasonably foreseeable that drivers, especially a driver who had difficulty reading highway signs, while acting in the pursuit of Uber's goals to provide transportation services to the public, would encounter passengers during the course of their duties and recklessly drive a car.

54.     At all times herein referenced, the Uber Driver was acting in the pursuit of Ubers business goals and in furtherance of its interests.  At no point did Plaintiff agree to the Terms and Conditions to the App, the full text of which was never provided nor read by Plaintiff when creating an account through Uber's App.

### COUNT I – NEGLIGENCE)
### (Against the Uber Entities)

55.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

56.     At all relevant times, the Uber Entities owed a duty to Plaintiff to act with reasonable care.  This duty arises by virtue of its employment, agency, joint liability with, or control of the Uber Driver; out of the foreseeability of the risks involved in transporting passengers; by application of the risk-utility test; and by contract.

57.     The Uber Entities breached their duties to Plaintiff by acting or failing to act as a reasonably prudent company would act under the same or similar circumstances, including but not limited to the following:

      a.     Failing to act with ordinary care;

      b.     Failing to exercise reasonable care to avoid a foreseeable risk of injury to Plaintiff:

20

c.    Failing to use ordinary care in the hiring of the Uber Driver to drive passengers;

d.    Failing to use ordinary care in the supervising, retaining, monitoring, or training of the Uber Driver as an employee to drive passengers;

e.    Failing to use ordinary care in selecting the Uber Driver as a driver, who was incompetent or unfit to be a driver for hire;

f.    Failing to use ordinary care in exercising whatever control the Uber Entities retained over the Uber Driver;

g.    Failing to use ordinary care in referring Plaintiff the Uber Driver for transportation;

h.    Failing to adopt, implement, and enforce safety policies;

i.    Through its employed driver transporting Plaintiff, failing to maintain a safe and proper lookout;

j.    Through its employed driver transporting Plaintiff, failing to maintain a safe speed;

k.    Through its employed driver transporting Plaintiff, failing to comply with all traffic laws;

l.    Failure to perform the transportation service bargained for with care, skill, and faithfulness so as not to injure Plaintiff and the other passengers during the performance of the contracted-for transport.

m.    The above acts or omissions by the Uber Entities were a producing and/or proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit.

21

58.     Plaintiff prays that, following a verdict, all such damages asserted below be awarded against the Uber Entities.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:  (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

## COUNT II – COMMON CARRIER NEGLIGENCE
### (Against the Uber Entities)

59.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

60.     At all relevant times, the Uber Entities were acting as a common carrier as the Uber Entities were in the business of carrying passengers and hold itself out for hire by the public.

61.     The Uber Entities solicit and operate a public transportation service.

62.     The business of the Uber Entities is the transport for hire of paying public passengers, and that transportation is not incidental to any other purpose for the Uber Entities but rather is the primary mode of making money.

63.     If the public did not seek transportation for pay from the Uber Entities, the Uber Entities would have no business and would not exist.

64.     As a common carrier, the Uber Entities owed the highest degree of care in the operation of the conveyance of its passengers and in the boarding and alighting of passengers. That degree of care is that which would be exercised by a very cautious and prudent person under the same or similar circumstances.

65.     The Uber Entities publicly solicited and operated a vehicle for hire transportation service to Plaintiff. The Uber Entities agreed and dispatched the Uber Driver.

66.     At all relevant times, the Uber Entities controlled Uber Driver as an employee, agent, or joint venturer.

67.     The Uber Entities owed Plaintiff the highest degree of care as a common carrier.

68.     The Uber Entities violated that highest degree of care by:

   a.     Failing to act as a very cautious or prudent company would under the same or similar circumstances;

   b.     Failing to exercise a high degree of care to avoid a foreseeable risk of injury to Plaintiff and other passengers;

   c.     Failing to exercise a high degree of care in the hiring of Uber Driver to drive passengers;

   d.     Failing to exercise a high degree of care in the supervising, retaining, monitoring, or training of Uber Driver as an employee to drive passengers;

   e.     Failing to exercise a high degree of care in selecting Uber Driver as a driver as Uber Driver was incompetent or unfit to be a driver for hire;

   f.     Failing to exercise a high degree of care in exercising whatever control the Uber Entities retained over Uber Driver;

g.   Failing to exercise a high degree of care in referring Plaintiff to the Uber Driver for transportation;

h.   Failing to exercise a high degree of care in adopting, implementing, and enforcing safety policies;

i.   Through their employed driver transporting Plaintiff, failing to maintain a safe and proper lookout;

j.   Through their employed driver transporting Plaintiff, failing to maintain a safe speed;

k.   Through their employed driver transporting Plaintiff, failing to comply with all traffic laws; and

69.   The above acts or omissions by Uber Entities were a producing and/or proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:   (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

## COUNT III – NEGLIGENT UNDERTAKING
### (Against the Uber Entities)

24

70.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

71.     The Uber Entities undertook, for pecuniary benefit, to arrange and dispatch drivers to customers who requested car services and thus assumed a duty, inter alia, to select, train, monitor, regulate, and control the drivers and cars used to ensure that the driver and car dispatched would be safe under the Restatement (Second) of Torts § 323.

72.     Further, the Uber Entities assumed the duty to provide a safe trip and to warn or protect passengers from foreseeable dangers under the Restatement (Second) of Torts § 323.

73.     Having assumed those duties, the Uber Entities were negligent as set forth in the preceding causes of action.

74.     The above acts or omissions by Uber Entities were a producing and/or proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:  (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

## COUNT IV – NEGLIGENT HIRING, SUPERVISION, AND RETENTION
### (Against the Uber Entities)

75.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

76.     The Uber Entities owed Plaintiff and the general public a duty of reasonable care in the hiring, training and supervision of their drivers.

77.     The Uber Entities did breach that duty of care in the hiring, retention and/or supervision of the Uber Driver, who was unfit to be providers of transportation, and who was not adequately trained or supervised in driving and conduct with customers.

78.     The Uber Entities knew or should have known that the Uber Driver, due to, for examples, his inability to read street sign nor communicate with the passenger, would be a danger to passengers and lead to a risk of the very type of danger and harm that occurred November 6, 2016.

79.     As a direct and proximate result of the negligence, carelessness, recklessness, and unlawfulness of the Uber Entities, Plaintiff sustained serious injuries.

80.     The Uber Entities knew or should have known that its negligence and breach of duty of care would cause or had a substantial probability of causing severe emotional distress to Plaintiff, and in fact did cause Plaintiff severe emotional distress and severe physical harm.

81.     Accordingly, Plaintiff is entitled to recovery against the Uber Entities in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:   (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to,

26

compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

## COUNT V – FRAUD
### (Against the Uber Entities)

82.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

83.     The Uber Entities made intentional misrepresentations of fact to Plaintiff known by the Uber Entities to be false, to wit, that Plaintiff would be safely taking rides with drivers whose backgrounds had been screened by Uber, and who would be trained to provide them with safe passages, but who, in reality, Uber had not screened in any meaningful way, and who were grave threats to Plaintiff's safety and well-being.

84.     The Uber Entities made these misrepresentations to Plaintiff despite knowing that they had not adequately screened or trained drivers.

85.     The Uber Entities false statements concerning safety measures detailed herein were made knowingly, or with a willful, wanton and reckless disregard for the truth, and intended to deceive and defraud Plaintiff into agreeing to utilize the Uber Entities' services.

86.     The Uber Entities made these misrepresentations with the intent to cause Plaintiff to rely on this false information and induce Plaintiff into utilizing the Uber Entities' services.

87.     As a result of the Uber Entities' deliberate misrepresentations of material facts, Plaintiff suffered significant damages.

88.     The Uber Entities engaged in fraud, oppression and/or malice, and was in conscious disregard of the rights and safety of others, including, but not limited to, Plaintiff, so as to warrant the imposition of punitive damages.

89.     Accordingly, Plaintiff is entitled to recovery against the Uber Entities in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:  (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

## COUNT VI – NEGLIGENT MISREPRESENTATION/NON-DISCLOSURE
### (Against the Uber Entities)

90.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

91.     By engaging in intentional acts and omissions alleged in the complaint, the Uber Entities have made misrepresentations to and defrauded Plaintiff.

92.     The Uber Entities intended that Plaintiff would rely on the material misrepresentations and omissions to her detriment.  The Uber Entities acted willfully, knowingly, and/or recklessly with respect to the acts and omissions set forth above.

28

93.     Plaintiff reasonably relied upon the misrepresentation of the Uber Entities to Plaintiff's detriment.  Plaintiff suffered injury and damages as result of such fraud.

94.     The Uber Entities concealed and suppressed and/or omitted material facts regarding the transportation services provided to Plaintiff.

95.     As a direct and proximate cause of the Uber Entities' misrepresentations, omissions, and concealment of the truth, Plaintiff has been damaged and will continue to suffer damages.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:   (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

## COUNT VII – VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (Against the Uber Entities)

96.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

97.     The conduct described above constitutes violation of the New Jersey Consumer Fraud Act, ("NJCFA") N.J.S.A. § 56:8-1 et. seq.

98.     The Uber Entities engaged in concealment, suppression, or omission in violation of N.J.S.A. § 56:8-1 in selling and advertising services under false pretenses.

29

99.     The Uber Entities engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that Plaintiff and/or the general public would rely upon the concealment, suppression, or omission of such material facts.

100.     Plaintiff would not have used the Uber Entities' services had she known or become informed of the material misrepresentations by the Uber Entities.

101.     The Uber Entities' concealment, suppression, or omission of material facts as alleged herein constitute deceptive and fraudulent business practices within the meaning of N.J.S.A. § 56:8-1 et. seq.

102.     As a direct and proximate result of the Uber Entities' conduct, Plaintiff has suffered damages and ascertainable loss for which the Uber Entities are liable to Plaintiff, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

**WHEREFORE,** Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:  (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

**COUNT VIII – VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW**
**(Against the Uber Entities)**

103.     Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

104.     Gen. Bus. Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York.

105.     Gen. Bus. Law § 350 prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York.

106.     Based on the foregoing, the Uber Entities engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

107.     The Uber Entities engaged in concealment, suppression, or omission in violation of the New York General Business Law in selling and advertising services under false pretenses.

108.     The Uber Entities engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that Plaintiff and/or the general public would rely upon the concealment, suppression, or omission of such material facts.

109.     Plaintiff would not have used the Uber Entities' services had she known or become informed of the material misrepresentations by the Uber Entities.

110.     The Uber Entities' concealment, suppression, or omission of material facts as alleged herein constitute deceptive and fraudulent business practices within the meaning of the New York General Business Law.

111.     The false, misleading and deceptive statements and representations of fact, as discussed herein, were directed to Plaintiff, were relied upon by Plaintiff, and constitute advertising in connection with the furnishing of services in the State of New York.

112.    The false misleading and deceptive statements and representations of fact, as discussed above, caused Plaintiff's injury.

113.    As a direct and proximate result of the Uber Entities' conduct, Plaintiff has suffered damages and ascertainable loss for which the Uber Entities are liable to Plaintiff, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:  (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

## COUNT IX – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
### (Against the Uber Entities)

114.    Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

115.    The conduct described above constitutes violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 502/1 et seq. ("ICFA"),

116.    Plaintiff is a "person" and "consumer" as defined by 815 ILCS 505/1(c) and (e) of the ICFA.

117.    The Uber Entities engaged in concealment, suppression, or omission in violation of the ICFA in selling and advertising services under false pretenses.

118.    The Uber Entities engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that Plaintiff and/or the general public would rely upon the concealment, suppression, or omission of such material facts.

119.    Plaintiff would not have used the Uber Entities' services had she known or become informed of the material misrepresentations by the Uber Entities.

120.    The Uber Entities' concealment, suppression, or omission of material facts as alleged herein constitute deceptive and fraudulent business practices within the meaning of the ICFA.

121.    As a direct and proximate result of the Uber Entities' conduct, Plaintiff has suffered damages and ascertainable loss for which the Uber Entities are liable to Plaintiff, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:   (1) an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper

**COUNT X – NEGLIGENCE**

**(Against the Individual Defendants)**

122.    Plaintiff alleges and asserts each of the preceding paragraphs as if fully set forth herein.

123.    At all relevant times, Defendant Uber Driver and Defendant Quintana owed a duty of care to Plaintiff as a passenger in a car the Uber Driver was operating.

124.    The Uber Driver committed acts or omissions, which constitute negligence and were a proximate cause of the Plaintiff's injuries and damages.

125.    Defendant Quintana committed acts or omissions, which constitute negligence and were a proximate cause of the Plaintiff's injuries and damages.

126.    At all relevant times, Defendants Uber Driver and Quintana had a duty to act as reasonably prudent operators of a motor vehicle in like or similar circumstances.  They breached that duty through their acts and omissions, including but not limited to:

        a.    Failing to maintain a safe and proper lookout;

        b.    Failing to maintain a safe speed;

        c.    Failing to yield to other vehicles;

        d.    Failing to comply with all traffic laws;

        e.    Failing to act with ordinary care.

127.    The above acts or omissions by the Uber Driver and Defendant Quintana were a producing and/or proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit. Plaintiffs pray that, following a verdict, all such damages asserted below be awarded against the Uber Driver and Defendant Quintana.

**WHEREFORE,** Plaintiff prays that the Court enter judgment in their favor and against Defendants, containing the following relief:  (1) an award of damages in an amount to be

determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to his professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff; (2) an award of punitive damages; (3) an award of costs that Plaintiff have incurred in this action, as well as reasonable attorneys' fees and expenses to the fullest extent permitted by law; and (4) such other and further relief as the Court may deem just and proper.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to *Rule* 4:10-2(b), demand is made that Uber disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets.  This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER & McOMBER, P.C.
*Attorneys for Plaintiff, Katherine Vesce*

By: /s/ *Matthew A. Luber, Esq.*

Dated:  August 10, 2017

35

## DESIGNATION OF TRIAL COUNSEL

Pursuant to *Rule* 4:25-4, MATTHEW A. LUBER, ESQUIRE is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to *Rule* 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER & McOMBER, P.C.
*Attorneys for Plaintiff, Katherine Vesce*


By: */s/ Matthew A. Luber, Esq.*

Dated: August 10, 2017

36

# Civil Case Information Statement

**Case Details: HUDSON | Civil Part Docket# L-003329-17**

**Case Caption:** VESCE KATHERINE  VS UBER TECHNOLOGIES INC.

**Case Initiation Date:** 08/11/2017

**Attorney Name:** MATTHEW ALLEN LUBER

**Firm Name:** MC OMBER & MC OMBER, PC

**Address:** 54 SHREWSBURY AVENUE

RED BANK NJ 07701

**Phone:**

**Name of Party:** PLAINTIFF : Vesce, Katherine

**Name of Defendant's Primary Insurance Company (if known):** None

**Case Type:** PERSONAL INJURY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**



I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/11/2017

Dated

/s/ MATTHEW ALLEN LUBER

Signed